IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| NORMAN SPRUILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:12-cv-806 (AJT/TRJ) |
| | ) | |
| KIP KILLMON'S TYSONS FORD, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Norman Spruill, claims that his former employer, defendant Kip Killmon's Tysons Ford, Inc. ("Kip Killmon's"), subjected him to a hostile work environment and engaged in discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 1981. Kip Killmon's moved for summary judgment. A hearing on the motion was held on September 28, 2012. The Court found that there are no genuine disputes of material fact and the defendant is entitled to judgment as a matter of law. The Court therefore granted the motion and now issues this Memorandum Opinion in further support of its decision.

## I. BACKGROUND

### A. Facts

The case before the Court stems from Plaintiff Norman Spruill's employment and termination from Kip Killmon's. Spruill, who is African American, began working at Kip Killmon's on May 10, 2011. He was hired by Michael Hayes, who also was his supervisor. Hayes is also African American. After a series of unexcused absences, Spruill was fired from his position on April 27, 2012.

While employed at Kip Killmon's, Spruill alleges he was subject to several instances of

1

offensive conduct, including principally the following allegations.

On February 9, 2011, Chris Mensel, a coworker, asked Spruill how much he would charge to "whoop somebody [*sic*] ass," told him he was standing like a "thug," and once asked Spruill if he could buy him some marijuana from the "hood." Spruill also witnessed Mensel get into an altercation with a black customer and threaten to "throw [the customer's] African ass out of here." After Dale Balderson, Kip Killmon's General Manager, heard about the incident, Mensel was verbally reprimanded but not suspended. On another occasion, Mensel told Spruill "I don't deal with your people."

In March, 2011, Spruill held the door open for Balderson, who said to him, "Oh I see you are very good at holding open doors." On two separate occasions, Balderson asked Spruill, who has dreadlocks, whether he would also look good in dreadlocks. A few times, Spruill saw Balderson raise his arm to employees of all races and say "power to the people." According to Spruill, Balderson sometimes moved in a "hip hop style," referred to his hat as a "homie hat" three times, and gave the plaintiff "high fives," which Spruill refers to as "specialty handshakes." Finally, when Spruill complained to Balderson that he believed he was receiving less compensation than another employee, Carlos Rodriguez, Balderson responded that he "had better not be opening other employees' paychecks," a response Spruill found racially offensive.

During his eleven-month period of employment at Kip Killmon's, Spruill accrued several unexcused absences. Prior to his termination, Hayes warned the plaintiff that he needed to start coming to work for all of his scheduled shifts. When Spruill requested permission to visit his mother, who was ill, in Atlanta, Hayes told him to go if that is what he needed to do but warned him that he did not have any more vacation days. Spruill went to Atlanta anyways and was fired upon his return. At the time of his termination, Spruill lacked sufficient sick days or vacation

days to make up for those absences. Although Hayes discussed the decision to fire Spruill with Bill Lyon, who agreed that Hayes should fire Spruill, the ultimate decision belonged to Hayes alone.

### B. Procedural History

The initial Complaint [Doc. No. 1] was filed on September 12, 2011, by Nanette Reed and Winnifer Stovall. It was never served on the defendant. Shortly thereafter, Norman Spruill and Danielle Fogg joined Reed and Stovall as plaintiffs in an Amended Complaint [Doc. No. 3] alleging that Kip Killmon's unlawfully discriminated against the plaintiffs on the basis of race and/or sex, and subjected them to a hostile work environment. In response to the Amended Complaint, Kip Killmon's filed a Motion to Dismiss for Failure to State a Claim [Doc. No. 8], a Motion to Strike Amended Complaint [Doc. No. 12], and a Motion to Sever [Doc. No. 10]. By Oder dated April 10, 2012 [Doc. No. 28], the Court denied the Motions to Dismiss and Strike. It also denied the Motion to Sever, but without prejudice to its renewal following discovery; and the plaintiffs' claims remained consolidated for the purposes of discovery. Following the close of discovery, the defendant filed a Motion to Bifurcate [Doc. No. 70] and a second Motion to Sever [Doc. No. 73]. The Court granted both motions [Doc. No. 90]. In the interim, Reed and Stovall settled all of their claims against Kip Killmon's, leaving only Fogg and Spruill. Kip Killmon's moved for summary judgment in both cases. In a hearing held on September 28, 2012, the Court denied Kip Killmon's motion as to Danielle Fogg, but granted the motion as to Spruill.

### II. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the initial burden to show the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party, that is "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007). However, "unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment." *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994).

4

### III. ANALYSIS

Spruill seeks recovery under Title VII based on two different theories: (1) hostile work environment (Count X); and (2) illegal discrimination on the basis of race (Count XI). The Court addresses each in turn below.

#### A. Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment; and (4) which is imputable to the employer." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (internal quotation marks omitted). When a plaintiff asserts a claim for hostile work environment, "legally sufficient evidence is required to transform an ordinary conflict such as between [employees] into an actionable claim of discrimination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000).

The Court will assume, without deciding, that Spruill has established the first, second, and fourth elements of his claim and therefore will only discuss whether the alleged conduct was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment." *Mosby-Grant*, 630 F.3d at 334. This element "has both subjective and objective components." *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 333 (4th Cir. 2003). "First, the plaintiff must show that he has subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citations omitted).

In order to establish a hostile work environment, the plaintiff must demonstrate "the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule or intimated' thereby creating an abusive atmosphere." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (quoting *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (*en banc*)). In assessing a claim for hostile work environment, the Court must examine "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Peary v. Gross*, 365 F. Supp.2d 713, 728 (E.D. Va. 2005) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)). In fact, "courts generally require that the offensive conduct occur on a nearly constant basis." *Leonard v. Tenet*, 2004 WL 3688406, at *9 (E.D. Va. June 30, 2004); *see also Ocheltree*, 335 F.3d at 333. "Hence, '[a] recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 778 (1998)); *see also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006).

Spruill relies on the following facts to support his claim: (1) one time Mensel said he looked like a thug and asked how much he would charge to "whip somebody ass;' (2) Mensel once asked Spruill to buy him some marijuana from the "hood;" (3) Spruill once heard Mensel threaten an African customer; (4) Mensel once said "I don't deal with your people;" (5) two times Balderson asked Spruill if he would look good with dreadlocks; (6) Balderson once told

Spruill he held the door well; (7) Balderson asked the plaintiff to remove his "homie hat" on three occasions; (8) Balderson sometimes moved in a "hip hop style" in which he looked like he was "bopping like if the music playing;" (9) Balderson gave the plaintiff high fives; (10): Balderson sometimes said "power to the people" to employees of all races; and (11) Balderson told Spruill not to open other employees paychecks.[1] Of those incidents, he admits in his deposition that he was not offended by the use of the words "homie hat," the "hip hop style" walking, or the high fives; and the Courts finds and concludes as a matter of law the these comments and actions, either individually or collectively, did not create an abusive atmosphere sufficient to constitute a hostile work environment. The relied upon comments and incidents, even if considered race-based, were episodic, occurred in isolation over an 11-month period, and are not the type of race-based slurs considered sufficiently severe, in isolation, to support a claim for hostile work environment. *See, e.g., Faragher*, 524 U.S. at 788 (holding that Title VII does not protect against "the ordinary tribulations of the workplace, such as the sporadic use of abusive language... and occasional teasing"); *Sunbelt*, 521 F.3d at 315 ("[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test"); *Roberts v. Fairfax Cnty. Pub. Schs.*, 2012 WL 380130, at *5 (E.D. Va. Feb. 6, 2012) (holding that the use of the term "nigger" two times by the plaintiff's supervisor was "insufficient to permeate [the plaintiff]'s work environment with discriminatory intimidation, ridicule, and insult."). There is also insufficient

---

[1] In an attempt to bolster his claim, Spruill also describes incidents that occurred well before he was hired and after he was fired. *See Pl. Br. in Opp.*, p. 3 n.1. When assessing the hostile work environment, we must focus primarily "on [Spruill]'s personal experience," *Honor v. Booz-Allen Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004); however, comments and incidents involving others can also be "relevant to determining whether [Spruill] was subjected to" a hostile work environment. *Jennings*, 482 F.3d at 695. In this case, it is hard to imagine the relevancy of these particular events, which occurred before and after Spruill's employment, and of which he admits he was unaware. Moreover, the record shows that the conduct the other plaintiffs complained of occurred in a different, separate division, and involved different actors.

7

evidence to make the required showing that the relied upon conduct was undertaken with a discriminatory purpose or to humiliate, intimidate, or ridicule him. *See Hawkins*, 203 F.3d at 274 ("Law does not blindly ascribe to race all personal conflicts between individuals of different races... Instead legally sufficient evidence is required to transform an ordinary conflict... into an actionable claim of discrimination.").

### B. Discrimination

Spruill claims that he was fired on account of his race, in violation of 42 U.S.C. § 1981. Based on the record before the Court, there is no direct evidence of discrimination against Spruill. Spruill must therefore navigate the *McDonnell Douglas* burden-shifting regime, which first requires him to establish a *prima facie* case of discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). A *prima facie* of wrongful discharge requires Spruill to show "(1) he is a member of a protected class, (2) he suffered an adverse employment action (such as discharge); (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class." *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Hill*, 354 F.3d at 285. If the defendant satisfies its burden of production, "the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'" *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Texas Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Spruill has not produced evidence sufficient to establish satisfactory job performance; thus, he cannot establish his *prima facie* case of unlawful termination.[2] Kip Killmon's proffered reason for terminating Spruill was his attendance record. It is undisputed that, in his brief tenure at Kip Killmon's, Spruill accrued more unexcused absences than he had sick or vacation days. The plaintiff's failure to comply with his employer's leave policy, specifically not showing up for work, clearly establishes his failure to adequately perform his job. *See, e.g., Zanganah v. Council of Co-Owners of Fountains Condominium, Inc.*, 2010 WL 5113637, at *7-8 (E.D. Va. Dec. 8, 2010) (holding that the plaintiff failed to satisfy the third prong of the *McDonnell Douglas prima facie* case where he had several unexcused absences).

Even assuming Spruill met his *prima facie* burden, Kip Killmon's has offered a legitimate, non-discriminatory reason for the termination, which Spruill has not rebutted. Specifically, Spruill missed more days of work than permitted under company rules, a fact that Spruill does not dispute or even address in his brief. Instead, Spruill argues that employees outside the protected class had similar attendance problems and were not fired. Although selective application of a facially neutral policy can be probative of pretext, *see Merritt v. Old Dominion Freight*, 601 F.3d 289, 297-99 (4th Cir. 2012), the record shows only that these employees were sometimes tardy, whereas Spruill had an excessive number of unexcused

---

[2] Relying on a case from the Eastern District of North Carolina, Spruill contends that Hayes's post-termination offer to give a letter of recommendation is sufficient to satisfy this *prima facie* element of satisfactory job performance and preclude summary judgment. Pl. Br., p. 14 (citing *Murray v. Akima Corp.*, 2009 WL 674395 (E.D.N.C. March 12, 2009). In *Murray*, a discrimination in hiring case, the Court held that an employer's offer to provide letters of recommendation to the plaintiffs could be used as evidence that they were qualified workers, where the defendants claimed the plaintiffs failed to submit evidence showing they were qualified for the positions sought. Here, there is no dispute that Spruill was absent, as his employer claimed, and that the employer relied on those absences to fire the plaintiff.

*absences.* Moreover, after Hayes spoke with the other employees in question, their attendance problems ceased.

Also significant is that Spruill was fired by Hayes, a member of his protected class, who had also hired him,[3] establishing the foundation for the "same actor" inference articulated in *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991). In *Proud,* the Fourth Circuit concluded that where, as here, the same person (Hayes) hired and fired the plaintiff within a relatively short period of time, there is "a strong inference that the employer's stated reason" for termination is not pretextual. *see also Reeves v. Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Likewise, no fact finder could reasonably infer, without more than what appears in this record, that Hayes, a member of the plaintiff's protected class, would hire Spruill and then fire him based on his race a mere 11 months later.

Finally, Spruill makes an unsubstantiated claim that he was subjected to disparate treatment in pay, a claim he then relies upon to demonstrate that Hayes's stated reason for his termination is pretextual. Even assuming the claim has merit, there is no evidence in the record that Hayes had any control over compensation, and it is the perception of the decision maker that is relevant. *See, e.g., Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006). More importantly, the admissible evidence in the record establishes that Spruill and the other employee identified in the Amended Complaint, whose compensation forms the basis for this claim, Mr. Rodriguez, were on the same pay plan. In his opposition to the motion for summary judgment, Spruill references two additional employees, his replacement Ron Rosaly and Eric West,

---

[3] Spruill asserts, without factual basis, that Hayes was instructed to terminate the plaintiff by Lyon, who is white. The record actually shows that, although Hayes sought advice from Lyon, the ultimate decision was his own. In fact, the record demonstrates that Hayes would have terminated Spruill regardless of what Lyon said.

claiming that they received more favorable compensation. However, there is no admissible evidence in the record to support this claim.

Although terminating Spruill under the circumstances that it did may have been insensitive or even harsh, the Fourth Circuit has consistently held that "[w]hen an employer gives a nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, so long as it truly was the reason for plaintiff's termination." *Hawkins*, 203 F.3d at 218; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Because the plaintiff has failed to produce evidence indicating that Kip Killmon's proffered reason for terminating him was pretextual, the motion for summary judgment should be granted.

<h2 style="text-align:center">CONCLUSION</h2>

For the above reasons, the Court will grant the motion for summary judgment filed by the defendant [Doc. No. 98].

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 10, 2012

11